UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| MXI CORP, a Nevada corporation, | ) | |
| | ) | |
| Plaintiff, | ) | 3:10-CV-00721-LRH-RAM |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RONNIE WEBB, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the court is Plaintiff MXI Corp's Motion for Remand (#11[1]). Defendant Ronnie Webb filed an opposition (#16), and MXI filed a reply (#19).

**I.   Facts and Procedural History**

MXI manufactures and distributes chocolate products through a multi-level marketing network. Webb is a former MXI associate now with a competing multi-level marketing company. MXI initiated the present action on November 10, 2010, in the Second Judicial District Court for Washoe County, Nevada. Doc. #1, Ex. 1. The complaint asserts claims for (1) breach of contract, (2) misappropriation of trade secrets under NRS 600A.010 *et seq.*, (3) breach of the duty of good faith and fair dealing, (4) tortious interference with contractual relations, (5) tortious interference with prospective economic advantage, (6) injurious falsehood, (7) civil conspiracy and fraudulent

---

[1] Refers to the court's docket entry number

scheme, (8) temporary restraining order and preliminary and permanent injunction, (9) constructive trust, restitution, and unjust enrichment, and (10) punitive damages. *Id.* MXI essentially alleges that Webb misappropriated and misused confidential and proprietary information he acquired as an MXI associate, solicited other MXI associates, induced them to solicit other MXI associates, and disparaged MXI and its principals and products. *Id.* at pp. 1-2. MXI seeks monetary relief in the form of general damages in excess of $10,000, punitive damages, and attorney's fees. *Id.* at p. 17.

On November 18, 2010, Webb removed the action to federal court on the basis of diversity jurisdiction. Doc. #1. On December 10, 2010, MXI filed the present motion for remand to state court, arguing that Webb has failed to establish the amount in controversy exceeds $75,000, and, alternatively, that Webb violated the removal statute by failing to attach to his notice of removal the temporary restraining order issued by the state court. Doc. #11, p. 2. Diversity of citizenship is uncontested. *See* Doc. #1, ¶¶ 6-7.[2]

**II.    Legal Standard**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Among other cases, the district courts of the United States have original jurisdiction of civil actions where there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a).

---

[2] Webb's pleadings are contradictory regarding his state of residency. *Compare* Doc. #1, ¶ 6 (Notice of Removal: "Mr. Webb is a resident and citizen of Oklahoma."), *with* Doc. #12, ¶ 2 (Answer: denying Oklahoma citizenship and stating that "Mr. Webb is a resident of Kentucky"), *and* Doc. #16, p.10 (Opposition to remand: arguing that service in Oklahoma, two days after removal, was ineffective because Webb "resides in Kentucky"). *See also* Doc. #19, Ex. 5 (letter listing return address in Oklahoma). In either event, however, diversity of citizenship exists.

"If . . . it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus*, 980 F.2d at 566. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566 (citation omitted).

In removed diversity cases where the plaintiff's complaint does not specify the amount of damages, or specifies damages in an amount below the jurisdictional minimum, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75],000.00." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1145 (D. Nev. 2004). The district court "may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation omitted).

### III. Discussion

#### A. Burden of Proof

Consistent with the pleading limitation of Nevada Rule of Civil Procedure 8(a), MXI's state court complaint prays for damages in excess of Ten Thousand Dollars ($10,000)," plus unspecified punitive damages and attorney's fees. Doc. #1, Ex. 1, p. 17. MXI further pleads that the matter is exempt from arbitration under Nevada Arbitration Rule 3(A) because, among two other reasons, "the probable jury award value exceeds $40,000, exclusive of interests and costs." *Id.* at 2. As neither statement specifies a sufficient amount in controversy to support diversity jurisdiction,

Webb as the removing defendant bears the burden of proving a sufficient amount in controversy by a preponderance of the evidence. *See McCaa*, 330 F. Supp. 2d at 1150.

Webb argues that MXI's refusal to state "that it is seeking less than $75,000" effectively "turns the table on Mr. Webb to admit some wrongdoing and therefore admit to the alleged damages caused to Plaintiff." Doc. #16, p. 5. To the contrary, Webb's burden as the removing defendant is only to establish the amount in dispute, not the amount for which he should be held liable. And more fundamentally, the court rejects the implicit argument that some adverse inference should be drawn from MXI's silence. Because Nevada law does not allow a plaintiff to plead specific damages greater than $10,000, "the Court cannot find, implicit in Plaintiff's silence, support for [Defendant's] allegations as to the amount in controversy." *McCaa*, 330 F. Supp. 2d at 1150.

As in *Singer* and *Gaus*, the parties here are "caught between a [state] statute prohibiting statement of an ad damnum [above a certain amount], and the traditional federal removal framework, which bases removal on the amount stated in the ad damnum." *Singer*, 116 F.3d at 375 (California law). But the existence of such statutory limitations on plaintiffs' pleadings does not absolve defendants of their burden of establishing that the amount in controversy exceeds the jurisdictional threshold. *See, e.g.*, *id.* at 375-76; *Gaus*, 980 F.2d at 566-67. While Webb perceives his burden as onerous, the reason it is imposed on removing defendants "is that a plaintiff's ad damnum exceeding $[75],000 causes him to lose his selected forum, but defendant's claim supports moving the case to his preferred forum." *Singer*, 116 F.3d at 376. Moreover, "[t]he 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566.

**B. Seriousness of MXI's Allegations**

To carry his burden, Webb relies in part on the "seriousness of Plaintiff's allegations." Doc. #1, p. 2. In particular, Webb points out that MXI alleges, *inter alia*, conspiracy and fraud,

4

misappropriation of MXI's trade secrets, interference with MXI's contractual relations with its associates, and irreparable injury, including damage to MXI's credit, profits and good will. *Id.* at 3; Doc. #16, p. 6. There is nothing inherent in such allegations, however, that would establish the extent of the alleged harm and that the amount in controversy in this case more likely than not exceeds the jurisdictional minimum.

### C. MXI's Compensation Plan

Webb also relies on MXI's allegation in its complaint that it has over 50,000 associates, and on the documents attached to MXI's ex parte motion for a temporary restraining order, which lay out MXI's compensation plan for its associates. Based on this evidence, Webb argues that inferences can be made regarding the value of MXI's claims by "assuming" a certain number of associates at a certain level, their compensation, and that "Webb's alleged conduct has caused MXI's (and the Associates') profits to decrease by half," thereby producing an estimate of potential lost compensation to the associates. *See* Doc. #16, p. 7. The court is unpersuaded. Bare speculation regarding the degree by which MXI's profits have decreased does not constitute "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer*, 116 F.3d at 377.

### D. Nielsen Lawsuit

Webb further relies on a verified complaint in a separate lawsuit brought by Kurtis D. Nielsen, a principal of MXI, on behalf of MXI against Jeanette, Martin and Andrew Brooks. The verified complaint alleges that Nielsen contributed $100,000 to fund the initial operation of MXI in 2005 and was issued 20% ownership in the company. *See* Doc. #16, p. 7. From this, Webb infers that MXI likely had a $500,000 capitalization in 2005, and would likely be worth at least the same amount as of the time of removal of this lawsuit in 2010. *Id.*

Contrary to Webb's argument, however, MXI makes no allegation that "Webb's conduct is threatening the original $500,000 invested in MXI." *Id.* Nor is there indication that the damages

5

allegedly sustained by MXI due to Webb's alleged misconduct bear any relation to MXI's original capitalization. Fundamentally, Webb effectively urges the court to adopt a rule under which the amount in controversy requirement would be satisfied whenever the plaintiff is a company with a sufficiently large capitalization, without any evidence regarding the probable value of the claims actually alleged or the damages allegedly sustained by that company. This the court declines to do.

### E.  Attorney's Fees

A court may consider a potential award of attorney's fees in determining the amount in controversy if such fees are authorized by statute. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *McCaa*, 330 F. Supp. 2d at 1149. Webb points out that MXI has brought a claim for misappropriation of trade secrets under Nevada's Uniform Trade Secrets Act, which authorizes an award of "reasonable attorney's fees to the prevailing party "[i]f: "1. A claim of misappropriation is made in bad faith; 2. A motion to terminate an injunction is made or resisted in bad faith; or 3. Willful and malicious misappropriation exists[.]" NRS 600A.060. However, the mere possibility of an attorney's fees award is not sufficient to prove that the amount in controversy has been met. In order to meet their burden for removal, a defendant must provide factual support that attorney's fees should be considered and that the amount the plaintiff seeks will, more likely than not, exceed the amount needed to increase the amount in controversy to $75,000. *See McCaa*, 330 F. Supp. 2d at 1149; *see also Gaus*, 980 F.2d at 567. Here, Webb merely cites the statutory provision and has otherwise failed to provide the requisite factual support. He has therefore failed to carry his burden.

### F.  Arbitration Exemption

As noted, MXI avers in its complaint filed in state court that under Nevada Arbitration Rule 3(A) this matter is exempt from the state court's arbitration program arbitration because, among two other reasons, "the probable jury award value exceeds $40,000, exclusive of interests and

costs." Doc. #1, Ex. 1, p. 2. Webb argues that the court should instead construe this statement as alleging a probable jury award in excess of "$50,000," because the exemption requirement has been so revised. The court declines to do so. MXI's complaint does not simply cite to Rule 3(A); rather, MXI specifically pleads the $40,000 amount. The fact that MXI's pleading may be insufficient to exempt the action from the state court's arbitration program under the revised rule is immaterial to the instant federal proceedings and does not provide grounds for re-writing the complaint.

### G. Punitive Damages

Like attorney's fees, a court may consider a potential award of punitive damages in determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *McCaa*, 330 F. Supp. 2d at 1148-49. However, the mere possibility of a punitive damages award is not sufficient to prove that the amount in controversy has been met. In order to meet their burden for removal, a defendant must provide factual support that punitive damages should be considered and that the amount the plaintiff seeks will, more likely than not, exceed the amount needed to increase the amount in controversy to $75,000. *See McCaa*, 330 F. Supp. 2d at 1149; *see also Gaus*, 980 F.2d at 567. Such evidence may include "jury verdicts in cases involving similar facts." *McCaa*, 330 F. Supp. 2d at 1149.

Webb cites three cases involving similar causes of action (e.g., misappropriation of trade secrets, etc.), two of which involved an award of punitive damages. *See, e.g.*, *Hunter Douglas Inc. v. Sarti*, 2009 WL 5449885 (Nev. Dist. Ct. 2009) ($1.8 million in compensatory and punitive damages); *Drummond Am. v. Share Corp.*, 2010 WL 3406503 (D. Conn. 2010) ($268,205.60 in compensatory and punitive damages); *Casual Male Retail Gp. v. Yarbrough*, 2007 WL 4953283 (D. Mass. 2007) ($1.5 million in damages). The court declines, however, to adopt a categorical rule regarding amount in controversy based upon merely the nature of a cause of action. As these very cases illustrate, similar causes of action may lead to widely variant jury verdicts depending

upon the particular facts of each case.  Here, notwithstanding the citation of these cases, Webb fails to submit the requisite summary-judgment-type evidence upon which the court might find that this case involves sufficiently similar facts and economic harm and, thus, that the amount in controversy *in this case* more likely than not exceeds the jurisdictional threshold.

**IV.   Conclusion**

For the foregoing reasons, the court concludes that Webb, as the removing defendant, has failed to submit the requisite summary-judgment-type evidence to carry his burden of establishing, by a preponderance of the evidence, that the amount in controversy in this litigation exceeds the jurisdictional minimum.  The court need not reach MXI's alternative argument that remand is required due to Webb's failure to attach the state court's TRO to his notice of removal.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Remand (#11) is GRANTED. The present action, 3:10-CV-00721-LRH-RAM, is REMANDED to the Second Judicial District Court for Washoe County, Nevada.

IT IS SO ORDERED.

DATED this 28th day of January, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE